UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAMON DEL RIO,<br><br>      Petitioner,<br><br>v.<br><br>DANIEL PARAMO,<br><br>      Respondent. | Case No.: 17CV608 GPC (BGS)<br><br>**REPORT AND RECOMMENDATION FOR ORDER GRANTING RESPONDENT'S MOTION TO DISMISS PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS** |

  Petitioner Ramon Del Rio (hereinafter "Petitioner" or "Del Rio") is a California Prisoner proceeding pro se. Del Rio has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 ("Petition"). (ECF No. 1.) Pending before the Court is Respondent's Motion to Dismiss the Petition ("Motion"). (ECF No. 8.) Petitioner has filed an Opposition to the Motion to Dismiss ("Opposition"). (ECF No. 11.)

  This case is before the undersigned Magistrate Judge pursuant to S.D. Cal. Civ. R. 72.1(d) for a report and recommendation. The Court submits this Report and Recommendation to United States District Judge Gonzalo P. Curiel pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule HC.2 of the United States District Court for the Southern District of California.

  The Court has considered Respondent's Motion to Dismiss, Petitioner's Opposition, the Petition, and all exhibits and lodgments submitted by Petitioner and Respondent. For the reasons set forth below, this Court recommends that Respondent's

1

17CV608 GPC (BGS)

Motion to Dismiss be **GRANTED** and the Petition dismissed because the claims asserted do not fall within "the core of habeas corpus." *Nettles v. Grounds*, 830 F.3d 922, 934 (9th Cir. 2016) (en banc) (citations omitted).

I.   BACKGROUND

On January 25, 1978 Petitioner was convicted of two counts of first-degree murder. (Lodgment 1 at 1.) On February 22, 1978, Petitioner was sentenced to seven years to life in prison with the possibility of parole. (Pet. at 18;[1] Motion at 2.) Petitioner reached his minimum eligible parole date ("MEPD")[2] on May 19, 1984. (Lodgment 2.)

On September 22, 2015, Petitioner was issued a Rules Violation Report ("RVR") by a correctional officer for refusing to provide a urine sample. (Pet. at 29-32.) Petitioner claims the reason he did not comply with the correctional officer's request was due to a medical condition. (*Id*. at 12, 19, 21.) On October 24, 2015, Petitioner was found guilty of refusing a urinalysis in violation of prison rules. (Lodgment 3 at 16.) For this offense, Petitioner lost 30 days of behavioral credit, 90 days of yard privileges, 180 days of visits followed by 180 days of only non-contact visits, was confined to quarters ("CTQ") for 10 days, and was required to submit to one year of mandatory drug testing. (Pet. at 32.)

A few months before the RVR was issued, on June 9, 2015, Petitioner was denied parole. (Lodgment 9.)  In explaining its decision to deny parole, the Board of Parole Hearings ("the Board) stated that "Del Rio does pose an unreasonable risk of danger or threat to public safety and is not suitable for parole." (*Id*. at 2.) The Board goes on to explain and summarize its reasons for denying Petitioner parole, including his lack of

---

[1] The Court cites the CM/ECF pagination when referencing the Petition and attached exhibits, (ECF No.1), and Lodgment 3, Del Rio's Habeas Petition to the San Diego Superior Court with exhibits. (ECF No. 9-3.)  Page citations as to other lodgments reference the lodgment's pagination.

[2] "Under California law, prisoners with life terms . . . may not be released before their minimum eligible parole date (MEPD)." *Nettles*, 830 F.3d at 925.  "If the prisoner is found suitable for parole and has reached the MEPD, the prisoner is entitled to release." *Id*. (citing Cal. Penal Code § 3014(a)).

credibility, insufficient understanding of the causative factors of his commitment offense and the heinous nature of it, his previous record of violence and unstable social history, insufficient prison programming, a 2013 rules violation, an unfavorable Comprehensive Risk Assessment finding that Del Rio presented a statistically high risk to reoffend in the free community, and two confidential memoranda unsupportive of release. (*Id*. at 3–9.) The Board then considered the appropriate time until Petitioners next parole hearing and set it for seven years.[3] (*Id*. at 12.)

## II. DISCUSSION

In the Petition, Del Rio seeks habeas relief for alleged violations of his due process rights and prison staff's failure to comply with prison rules and California law in disciplining him for failing to provide a urine sample for drug testing. (Pet. at 1, 12-13.) He demands the RVR be expunged from his file and seeks restoration of the credits lost as a result of the RVR. (Pet. at 12.) The critical issue raised in the Motion to Dismiss is whether Petitioner can challenge the disciplinary proceedings through federal habeas review.[4]

Respondent argues that Petitioner's challenges to his disciplinary decision cannot invoke habeas jurisdiction because success on his Petition would not necessarily result in his speedier release and he does not attack the legality or duration of his confinement.

---

[3] The Board considered alternative time periods of fifteen and ten years. (Lodgment 9 at 10-11.)

[4] Respondent also challenges the merits of Petitioner's claims even if they had been brought under 42 U.S.C. § 1983. (Mot. at 5-7.) However, as discussed more fully below, because the Court concludes the Petition should be dismissed and is not amendable to conversion on its face to a § 1983 action, the Court does not address these arguments. If Petitioner elects to file a § 1983 claim, he still may not be able to state a claim under § 1983, but at this point, he has not even attempted to because he has presented his claims in a federal habeas petition rather than as a § 1983 action. (*See infra* II. B.) Respondent's arguments concerning the deficiencies of the claims if brought under § 1983 are better addressed if Petitioner files a § 1983 action and fails to state a cognizable claim under § 1983.

3

(Mot. at 3-4.) As to the RVR's impact on future parole considerations, Respondent emphasizes the "myriad of considerations" that Petitioner's parole denial was based on prior to the RVR. (*Id.* at 4.) As to the credit loss specifically, Respondent characterizes the credit forfeiture as an "illusory" loss. Because Petitioner is well beyond his MEPD with an indeterminate life sentence, the loss of credits does not lengthen his sentence. (*Id.*)

In opposition, Petitioner contends that any kind of guilty infraction in a RVR is a significant disadvantage when qualifying for parole. (Opp'n. at 2.) Petitioner believes he has to challenge the disciplinary proceeding because an infraction against him will affect his eligibility for parole when presented to the Board. (*Id.*) He argues granting his Petition "may result in a speedier release once [the] Parole Board assess[es] his central file (C-file) and there is no disciplinary infractions." (*Id.*)

### A. Habeas Jurisdiction

"Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus. An inmate's challenge to the circumstances of his confinement, however, may be brought under [42 U.S.C.] § 1983." *Hill v. McDonough*, 547 U.S. 573, 579 (2006) (citations omitted). "[I]f a state prisoner's claim does not lie at 'the core of habeas corpus,' it may not be brought in habeas corpus but must be brought, 'if at all,' under § 1983."[5] *Nettles v. Grounds*, 830 F.3d at 934 (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 487 (1973) and *Skinner v. Switzer*, 562 U.S. 521, 535 n. 13 (2011)). If Petitioner's claim is not appropriately brought as a habeas claim, it must be dismissed or converted to a § 1983 action. *See id.* at 935-36. A claim falls within the core of habeas if is "challenges the fact or duration of the conviction or sentence." *Id.* at

---

[5] A state prisoner's claim falls under "the core of habeas corpus" and is subject to the provisions of the Anti-terrorism and Effective Death Penalty Act ("AEDPA"), or the claim "challenges any other aspect of prison life" and is subject to the provisions of the Prison Litigation Reform Act ("PLRA") under § 1983. *Nettles*, 830 F.3d at 934.

934. And, more specifically, success on the merits of the claim must "necessarily lead to [a petitioner's] immediate or earlier release for confinement." *Id.* at 935.

Whether Del Rio's Petition falls within the core of habeas is squarely controlled by the Ninth Circuit's decision in *Nettles v. Grounds*. Like Petitioner, Nettles was serving a life term and beyond his MEPD. *Id.* at 924-25. He too was challenging a rules violation on constitutional grounds, seeking habeas relief to expunge an RVR and restore lost credits, and arguing that the Board would be more likely to grant parole without the RVR in his file.[6] *Id.* at 934. The court found his claim did "not fall within 'the core of habeas corpus'" "because success on [his] claims would not necessarily lead to his immediate or earlier release from confinement." *Id.* at 935 (quoting *Skinner*, 521 U.S. at 535 n.13).

The court explained that "expungement of the challenged disciplinary violation would not necessarily lead to a grant of parole," because [u]nder California law, the parole board must consider 'all relevant, reliable information' in determining suitability for parole." *Id.* at 935 (quoting Cal. Code Regs. Tit. 15, § 2281(b)). The RVR in *Nettles*, like the RVR at issue here, "is merely one of the factors shedding light on whether a prisoner constitutes a current threat to public safety." *Id.* (citation omitted). "Because the parole board has the authority to deny parole 'on the basis of any grounds presently available to it,' the presence of a disciplinary infraction does not compel the denial of parole, nor does the absence of an infraction compel the grant of parole." *Id.*

The record here reflects that just a few months before Petitioner incurred the RVR at issue in this Petition, he was denied parole for a variety of reasons. Although the Board did raise a prior rules violation in that hearing, they also discussed at length Petitioner's poor credibility, that he had continued to minimize and blame other for his criminal background, that he had not meaningfully engaged in institutional programs,

---

[6] Nettles additionally argued the Board would be more likely to set his next parole hearing earlier without the RVR. *Nettles*, 830 F.3d at 934. The court found this claim also did not fall within the core of habeas. *Id.* at 935.

5

lacked any insight into how he ended up being a criminal,[7] lacked victim empathy, and received a Comprehensive Risk Assessment finding he "presents [a] statistically high risk to reoffend in the free community." (Lodgment 9 at 3-8.) The Board also considered the "the very cruel, brutal, callous manner" of Petitioner's commitment offenses resulting "in a very, very painful death" — stabbings of two people. (*Id.* at 3) In short, with or without the RVR, Petitioner may or may not be granted parole. Because so many other factors weigh into the decision, having the RVR expunged would not necessarily lead to a grant of parole for Petitioner. As in *Nettles*, the presence of an RVR does not compel the denial of parole, and the absence of it would not entitle Petitioner to a grant of parole. *Nettles*, 830 F.3d at 935.

To the extent Petitioner is arguing restoration of the 30 days of behavioral credit would necessarily result in an immediate or earlier release, the Court disagrees. As in *Nettles*, Petitioner is well beyond his MEPD. *Id*. at 925. These credits will not get him to his MEPD any faster because he reached it decades ago, and even if their restoration would have any impact on the outcome of his next parole hearing, it would be one among the many considerations before the Board noted above and not necessarily lead to an earlier release.

Petitioner's claims do not lie at "the core of habeas corpus" and "must be brought, if at all, under § 1983," because there is no showing that success on the merits would "necessarily" have an effect on the duration of his confinement. *Id*. at 935.

### B. Conversion to § 1983

When an action is improperly brought as a habeas petition, district courts "may construe a petition for habeas corpus to plead a cause of action under § 1983 after

---

[7] The Presiding Commissioner of Del Rio's parole hearing commented as follows in summarizing Petitioner's lack of insight: "[y]ou were a very violent parasite in the community, and you are not recognizing that and you are not understanding that." (Lodgment 9 at 6.)

notifying and obtaining informed consent from the prisoner." *Id.* at 936. However, courts should only convert the petition to a § 1983 claim if it "is amenable to conversion on its face." A petition is amenable to conversion on its face if "it names the correct defendants and seeks the correct relief." *Id.*

A "habeas corpus action and a prisoner civil rights suit differ in a variety of respects . . . that may make recharacterization impossible or, if possible, disadvantageous to the prisoner compared to a dismissal without prejudice of his petition for habeas corpus." *Id.* (quoting *Robinson v. Sherrod*, 631 F.3d 839, 841 (7th Cir. 2011) and citing *Glaus v. Anderson*, 408 F.3d 382, 388 (7th Cir. 2005)). The differences would include: named defendant(s), filing fees, means of collecting the filing fees, and restrictions on future filings. *Id.*; *see also Glaus*, 408 F.3d at 388 (noting that recharacterizing a prisoner's action as a civil rights action may make it subject to the PLRA's three-strikes rule and different exhaustion requirements, as well as requiring the complaint to name a different defendant, such as the individual official responsible for the wrong rather than the warden).

Here, the petition is not amenable on its face for conversion. First, Petitioner names Warden Daniel Paramo as respondent. This may be appropriate for a habeas petition, but it is generally not for a § 1983 claim. The Petition does not contain any specific allegations against Warden Paramo as would be required to name him as a defendant in a § 1983 action. *See e.g. Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) ("The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation.") (citing *Rizzo v. Goode*, 423 U.S. 362, 370–71 (1976))). Additionally, the allegations in the Petition suggest that other unnamed individuals might be named as defendants if Petitioner had filed as a § 1983 claim.

Second, the Court's conversion of Petitioner's habeas petition could potentially have negative consequences for Petitioner. Although Petitioner alleges he has exhausted his claims in his habeas Petition, habeas and § 1983 claims are subject to different

7

exhaustion requirements and his failure to properly allege exhaustion for a § 1983 claim could result in dismissal. *See Nettles*, 830 F.3d at 932 n. 8. ("The procedural requirements imposed by AEDPA and the PLRA are distinct in substantial respects."). Additionally, § 1983 claims are also subject to the PLRA's three strikes rule. *Coleman v. Tollefson,* 135 S. Ct. 1759, 1761 (2015) (quoting 28 U.S.C. § 1915(g) and explain "a special 'three strikes' provision prevents a court from affording in forma pauperis status where the litigant is a prisoner and he or she 'has on 3 or more occasions, while incarcerated . . . , brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted."). Petitioner should have the opportunity to attempt to state a cognizable § 1983 claim and consider the possible consequences of the three strikes provision.

Under these circumstances, the Court recommends the Petition be dismissed rather than converted to a § 1983 action because it is not amenable to conversion on its face. *See Nettles*, 830 F.3d at 936. The Court additionally recommends that Petitioner be advised of the following if this Report and Recommendation is adopted and his Petition dismissed: (1) "that the court is not making a decision on the ultimate merit of the case;" (2) that Petitioner "may refile immediately under the proper legal label, subject to the normal rules such as those prohibiting frivolous lawsuits; and (3) that refiling under the proper legal label will probably have certain consequence," including those noted above as to exhaustion and the three strikes provision. *Glaus*, 408 F.3d at 389-90 ("If, as normally will be the case, conversion is improper, the district court should include [this] short and plain statement").[8]

---

[8] Although the court in *Nettles v. Grounds* did not specifically require this advisement to the petitioner in that case, in finding courts could convert habeas claims to § 1983 claims under appropriate circumstances, the court adopted the reasoning of *Glaus* and *Glaus* requires this advisement when conversion is improper. 830 F.3d at 936.

8

## III. CONCLUSION & RECOMMENDATION

For all the foregoing reasons, **IT IS HEREBY RECOMMENDED** the Court issue an Order: (1) approving and adopting this Report and Recommendation; and (2) granting Respondent's Motion to Dismiss the Petition.

**IT IS ORDERED** that no later than **January 26, 2018,** any party to his action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties by **February 2, 2018**.

The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

Dated: January 8, 2018

Hon. Bernard G. Skomal
United States Magistrate Judge